IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

Case No. 2:24-CV-00062-M

| | | |
|---|---|---|
| SETH WHITAKER CLABOUGH as Executor of the Estate of Casey Howard Clabough, | ) ) ) ) | |
| Plaintiff, | ) ) | ORDER |
| v. | ) ) | |
| ROBERT G. JONES, in his individual capacity, ROBERT W. JONES, in his individual capacity, NATASHA GREEN, LPN, NORA MANSFIELD, LPN, and SOUTHERN HEALTH PARTNERS, INC., | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter come before the court on a Motion to Dismiss filed by Defendants Robert G. Jones and Robert W. Jones ("Jones Defendants") [DE 20]. Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Brian S. Meyers issued a 34-page Memorandum and Recommendation ("M&R"), recommending that the court grant the Defendants' motion. DE 37. The parties each filed timely objections to the M&R and each filed written responses to their opponents' objections. DE 38, 40, 41, and 42. For the reasons that follow, the court adopts the M&R, grants the Jones Defendants' motion, and dismisses Plaintiff's claims against them.

## I. Legal Standards

A magistrate judge's recommendation carries no presumptive weight. The court "may accept, reject, or modify, in whole or in part, the . . . recommendation[ ] . . . receive further evidence

or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1); *accord Mathews v. Weber*, 423 U.S. 261, 271 (1976). The court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* § 636(b)(1). Absent a specific and timely objection, the court reviews only for "clear error" and need not give any explanation for adopting the recommendation. *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

Here, the parties do not object to Magistrate Judge Meyers' findings and conclusions regarding the proper legal standard by which to evaluate the present motion. *See* M&R at 17-19, DE 37; *see also* DE 39 at 1. Judge Meyers properly determined that the motion should be analyzed under Rule 12(b)(6), rather than Rule 12(b)(1), of the Federal Rules of Civil Procedure.

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (quoting *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). As a result, the court accepts the complaint's well-pled factual allegations as true, and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And importantly, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Likewise, "[l]abels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement will not suffice." *ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*, 917 F.3d

2

206, 211 (4th Cir. 2019). Ultimately, when considering a motion to dismiss, the court must "draw on its judicial experience and common sense" to determine whether the complaint "states a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

## II.  Objections

Plaintiff objects that Judge Meyers omitted certain facts and, in so doing, improperly construed the facts in favor of the Jones Defendants. To ensure that all well-pleaded factual allegations are considered, the court has added Plaintiff's listed "omitted" factual allegations to Plaintiff's Statement of Facts section below. Plaintiff's remaining objections are stated as follows:

1. The Recommendation did not expressly state that Plaintiff may establish a deliberate indifference claim under the pre-*Short* subjective test by showing "that the defendant knew of and disregarded a substantial risk to the inmate's health or safety."

2. The Recommendation misstated recitations of law from *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 362 (1991) and *Davison v. Rose*, 19 F.4th 626, 640 (4th Cir. 2021) concerning qualified immunity and personal liability.

3. The Recommendation improperly assigned to Plaintiff the burden of proof to show the federal constitutional "violation was of a clearly established right of which a reasonable person would have known."

4. The Recommendation omitted a legal principle that applies to Plaintiff's claims: "when plaintiffs have made a showing sufficient to demonstrate an intentional violation of the Eighth Amendment, they have also made a showing sufficient to overcome any claim to qualified immunity. 'The two inquiries' -- Eighth Amendment liability and qualified immunity -- 'effectively collapse into one.'"

5. The Recommendation cited and relied on inapplicable cases concerning the liability of medical

professionals for deliberate indifference when analyzing the clearly established law issue.

6. The Recommendation failed to examine the clearly established law issue under the proper inquiry for a deliberate indifference claim based on the Eighth Amendment subjective test: Does Plaintiff's Complaint plausibly allege that the Jones Defendants had actual knowledge of [Casey] Clabough's [(hereinafter, "the decedent")] serious medical needs and substantial risk of harm and the excessive risk posed by their inaction?

7. The Recommendation isolated Plaintiff's deliberate indifference claims into four separate areas and concluded that the law was not clearly established in each segmented area.

8. The Recommendation improperly determined that, with the exception of two specific policies, Plaintiff's allegations of jail policy and federal detention standard violations by the Jones Defendants were conclusory and not entitled to consideration.

9. The Recommendation incorrectly analyzed Plaintiff's allegations of policy violations regarding the suicide smock and supervision failures as independent deliberate indifference claims.

Defendants state their objections as follows:

A. The Magistrate Judge should have found that the decedent's constitutional rights were not violated and not just that any such rights were not clearly established at the time of his death.

B. The Magistrate Judge should have considered the exhibits attached to the motion to dismiss because they were authentic, integral to the Complaint, and relied on by the plaintiff.

## III. Plaintiff's Statement of Facts

Because the parties do not lodge objections to Judge Meyers' comprehensive recitation of Plaintiff's factual allegations (DE 37 at 2-13), other than Plaintiff's claim that Judge Meyers construed the facts in favor of the Jones Defendants by omitting some of them, the court need not

4

repeat the recitation here. The Jones Defendants do not object to inclusion of the omitted facts (listed in DE 38 at 2-4) and, by including them here, the court does not necessarily find that Judge Meyers erred (particularly as Plaintiff fails to specify how omission of these facts led to findings and conclusions against him), but simply seeks to demonstrate that all relevant factual allegations have been considered.

1. Under its agreement with the United States Marshals Service, the Albemarle District Jail (ADJ) must comply with Federal Performance Based Detention Standards. Compl. ¶ 33.

2. At all times relevant to this action, Defendants LPN Green and LPN Mansfield were duly licensed practical nurses (LPN) who were approved to practice certain assigned nursing activities and responsibilities, as set forth in N.C.G.S. § 90-171.20 and 21 N.C. Admin. Code § 36.0225, under the supervision of a registered nurse, advanced practice registered nurse, licensed physician, or other healthcare practitioner authorized by the State. *Id.* ¶¶ 59, 66.

3. The Jones Defendants, ADJ Administrators, were aware that Southern Health Partners provided limited mental health services at ADJ and had no mental health expertise and, as a result, ADJ had a Service Contract with Correctional Behavioral Health, PLLC (CBH) to provide mental health services at ADJ. *Id.* ¶¶ 54, 55.

4. In December 2022, CBH provided its mental health services to inmates at ADJ by videoconference and did not have any mental health staff present at the Jail. Deron K. Coy, Ph.D. and Stephen W. Lucente, Ph.D. were the primary CBH clinical psychologists who remotely assessed/evaluated patients with serious mental illness and suicide risks and consulted with ADJ medical staff. CBH psychologists customarily saw patients at ADJ by videoconference on Wednesdays for mental health assessments and follow-up

5

appointments. *Id.* ¶¶ 56, 57.

5. On Wednesday, December 7, 2022, Dr. Lucente diagnosed the decedent with schizophrenia, paranoid type. *Id.* ¶ 131.

6. During the next ten days [after seeing LPN Green on December 16 and 19, 2022], the decedent was seen by the following health care providers at ADJ:

    • December 21, 2022 – LPN Dani, a Southern Health Partners nurse at ADJ, for a nursing sick call visit;

    • December 21, 2022 – Dr. Lucente for a psychological follow-up via videoconference;

    • December 23, 2022 – LPN Dani for a nursing sick call visit;

    • December 27, 2022 – PA Lynam for a sick call referral; and,

    • December 28, 2022 – Dr. Lucente for a psychological follow-up on a mental health referral from the nursing staff. *Id.* ¶ 139.

7. On January 1, 2023, Defendants knew the medical staff, including Dr. Coy and possibly, Dr. Lucente, believed the decedent was experiencing a medical/psychiatric condition that necessitated the implementation of suicide precautions. *Id.* ¶ 185.[1]

8. On January 1, 2023, LPN Green and LPN Mansfield were aware that the decedent had not been placed in a suicide smock and they did not take any action to verify that detention staff were completing special watch supervision rounds. *Id.* ¶ 190.[2]

---

[1] Plaintiff objects to the M&R's omission of the contents of ¶ 185 as stated in the Complaint: "Mr. Clabough was experiencing a serious medical/psychiatric condition and needed to have proper suicide precautions implemented until he could receive a psychiatric assessment or emergency medical care." The court finds the allegation, as stated in the Complaint, conclusory, particularly in the use of the terms "*proper* suicide precautions" and "until he could receive a psychiatric assessment or emergency medical care." However, the court takes as true the factual portion of the allegations, as restated herein.

[2] Again, the court finds conclusory the allegations in ¶¶ 188 and 189—"LPN Green and LPN Mansfield knew that Mr. Clabough had a serious medical need" and they "knew, strongly

6

9. On January 1, 2023, the Jones Defendants were aware that the decedent had not been placed in a suicide smock or a safe cell. *Id.* ¶ 201.[3]

## IV. Analysis

At the outset, the court notes that the parties neither object to the M&R's sections titled "Plaintiff's Allegations" (except as detailed above) or "Applicable Legal Standards," nor request review of the "Order on Motion for a Status Update." The court finds no clear error with those sections on the face of the record and, therefore, adopts and incorporates by reference those portions of the M&R.

### A. Plaintiff's Objections 1 and 4 and Defendants' Objection A: Application of Improper Standard to, and Failure to Analyze Plausibility of, Deliberate Indifference Claim

Plaintiff asserts that Judge Meyers applied the wrong legal standard with respect to Plaintiff's deliberate indifference claim, in that he proceeded straight to the question whether Defendants, who seek qualified immunity, violated clearly established law.[4] For a different reason, the Jones Defendants also object to Judge Meyers' approach to analyzing the claim.

Government officials sued in their individual capacities are protected by qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *King v. Riley*, 76 F.4th 259, 264-65 (4th

---

suspected, or reasonably should have known that Mr. Clabough was a substantial suicide risk"—because these allegations merely state the elements of the cause of action. Moreover, the allegation that the nurses "knew, strongly suspected, or reasonably should have known" the decedent was a "substantial suicide risk" (¶ 189) conflicts, at least in part, with Plaintiff's allegation that "no health care providers assessed Mr. Clabough or completed a suicide risk screening for him. The detention staff also did not complete a suicide risk screening for him." Compl. ¶ 182. The M&R does properly consider, however, the information Plaintiff alleges the nurses actually "knew" about the decedent's medical condition and status, as set forth in ¶¶ 183 and 184. *See* M&R at 10.
[3] *See* Footnote 2, with respect to ¶¶ 199 and 200.
[4] To the extent that Plaintiff claims the M&R omitted any consideration of the pre-*Short* subjective test under the Eighth Amendment, this court disagrees. *See* M&R at 25.

7

Cir. 2023) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Thus, "[q]ualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Mays v. Sprinkle*, 992 F.3d 295, 301 (4th Cir. 2021) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

Plaintiff argues that, under prevailing Fourth Circuit law, "when plaintiffs have made a showing sufficient to demonstrate an intentional violation of the Eighth Amendment,[5] they have also made a showing sufficient to overcome any claim to qualified immunity," because "qualified immunity does not shield those who knowingly violate the law"; thus, the Fourth Circuit has "effectively collapse[d] qualified immunity's two inquiries into one, holding that dismissal on qualified-immunity grounds remains improper so long as the officers' mental state remains genuinely in issue." *Pfaller v. Ammonette*, 55 F.4th 436, 446 (4th Cir. 2022) (cleaned up). Plaintiff contends that Judge Meyers erred in failing to determine whether his factual allegations plausibly state a Fourteenth Amendment deliberate indifference claim, thus allowing the qualified immunity inquiry to "collapse."

The court is not persuaded. In *Pfaller*, the court explained that such "collapse" need not

---

[5]The court recognizes that, as a pretrial detainee, the decedent is protected under the Fourteenth Amendment for his deliberate indifference claim; however, for purposes of this analysis, a showing of an Eighth Amendment violation is sufficient to demonstrate a Fourteenth Amendment violation. *Mays*, 992 F.3d at 300 ("a pretrial detainee makes out a violation at least where he shows deliberate indifference to serious medical needs under cases interpreting the Eighth Amendment.").

8

occur "in *every* case where a dispute of fact related to the defendant's mental state remains." *Id.* at 446 (emphasis in original). Rather, the two-pronged analysis remains proper for cases in which the alleged risk of harm is not "obvious." *Id.* at 446-47 ("in [these] cases, there may be more attenuation between the risk of harm and the defendant's knowledge that his conduct is *constitutionally deficient*. And in these cases, a defendant is less able to use his own state of mind as a reference point to assess conformity to the law.") (cleaned up). In fact, in *King,* also cited by Plaintiff, the Fourth Circuit summed up the doctrine as follows:

> [T]he Fourth Circuit has carved out a class of deliberate-indifference claims to treat differently. Acknowledging that qualified immunity does not protect officials who knowingly disregard the law, *see Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L.Ed.2d 271 (1986), we have reasoned that officials who are aware that their conduct is constitutionally deficient cannot rely on the clearly established prong, *Pfaller*, 55 F.4th at 446-47 (citing *Thorpe v. Clarke*, 37 F.4th 926, 933-40 (4th Cir. 2022)). We have said that, sometimes, context makes the violation "obvious" and case law is thus not needed to establish this awareness. *See id.* at 447 (quoting *Thorpe*, 37 F.4th at 934). So when a defendant knows her conduct does not pass constitutional muster, we do not look to see if she violated clearly established precedent. *Thorpe*, 37 F.4th at 939-40. Instead, we ask only if her actions violated the Eight[h] Amendment. *See Pfaller*, 55 F.4th at 446. But, if she did not know her actions violated the Eighth Amendment, she is entitled to the same two-pronged, qualified-immunity approach as every other government official. *Id.* at 448 ("In such a case, the 'clearly established' prong continues to perform work independent of the 'constitutional-violation' prong.").

*Id.* at 265; *see also Pfaller*, 55 F.4th at 448 ("in some cases, . . . the court need not separately determine whether the constitutional right was clearly established if there remains a genuine issue of material fact as to an official's deliberate indifference, because that potential deliberate indifference would, if established, necessarily include an awareness of the illegality of the defendant's actions. … in [other] cases . . ., even where the[re] may be a dispute of material fact as to the underlying constitutional violation, a court may still inquire into whether a right was clearly established to determine if the defendants are entitled to qualified immunity.").

In *King*, the court evaluated which type of case it was asked to resolve by examining the

context of the alleged "known risk of harm." 76 F.4th at 265. The *King* court determined that, "although [defendant] took steps to mitigate [the risk of inmate-on-inmate violence]—for example, performing security checks every thirty minutes—he did not look in the cells on those checks. Yet the Constitution does not 'obvious[ly]' require he look in the cells to mitigate the risk of inmate-on-inmate violence." *Id.* As such, the defendant was "entitled to the two-prong approach." *Id.*

Here, Plaintiff alleges that the Jones Defendants "failed to address" a known risk of harm when they chose to consult with and follow the advice of onsite general health staff, rather than a senior mental health provider, when determining how to manage a suicidal inmate (decedent). Compl. ¶ 232. Plaintiff also alleges the Jones Defendants should have mitigated a known risk of harm by transporting the decedent, a suicidal inmate, to a safe cell or to a hospital for emergency psychiatric care, even without an order to do so by the treating medical staff. *See id.*[6] The court finds, taking the Plaintiff's allegations as true, it is not "obvious" that any of these alleged "acts or failures to act" demonstrate a knowing or reckless disregard of a substantial risk of serious harm or were "objectively unreasonable." *See Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023). Accordingly, the Jones Defendants are "entitled to the two-prong approach." *King*, 76 F.4th at 265. Plaintiff's objection is overruled.

The Jones Defendants agree that Judge Meyers properly utilized the two-prong approach in this case, but contend that he should have analyzed the plausibility of Plaintiff's allegations

---

[6] The court also would have construed from Plaintiff's alleged harms a right that requires jail administrators, like the Jones Defendants, to order suicide smocks for all suicidal inmates and to verify that subordinates are consistently following their orders concerning suicide watch. *See* Compl. ¶ 232. However, as described below, Plaintiff clarifies in his objection that he "alleged the policy violations to show the 'seriousness of the risk' to [the decedent] and the Jones Defendants' subjective knowledge of 'the excessive risk posed by the official's action or inaction'" to assist in supporting the subjective element of the deliberate indifference test, not as separate deliberate indifference claims. *See* DE 38 at 11.

10

supporting the deliberate indifference claim *in addition* to addressing whether the law was clearly established. Importantly, the Jones Defendants do not identify why the first prong analysis is necessary in this case. The Supreme Court has made clear that courts need not, and sometimes should not, engage in analyzing the first prong (i.e., whether a constitutional violation has been plausibly alleged) when a determination of the second prong (whether law supporting the alleged violation was clearly established) disposes of the matter. *See Pearson v. Callahan*, 555 U.S. 223, 237-42 (2009) (listing several circumstances, including invocation of the constitutional avoidance doctrine).

Of course, an adverse finding on either prong entitles a defendant to qualified immunity. *Id.* at 232. The *Pearson* court specifically ruled that courts may choose whether to commence qualified immunity analyses by examining the first prong or the second prong saying, "the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case." *Id.* at 242; *see also id.* at 236 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."). Here, Judge Meyers commenced with the second prong, and the Jones Defendants do not explain why this was an incorrect or erroneous choice. They also do not argue that Judge Meyers' recommendation is, itself, faulty; instead, they repeat their arguments supporting their position that Plaintiff's allegations do not state a plausible deliberate indifference claim. *See* DE 39 at 2-5. This court will not reject a recommended disposition simply because it does not include a party's preferred, but unnecessary, findings and conclusions. The Jones Defendants' objection is overruled.

11

Plaintiff claims that the Recommendation misstates recitations of law from *Hafer v. Melo*, 502 U.S. 21, 25 (1991) and *Davison v. Rose*, 19 F.4th 626, 640 (4th Cir. 2021) concerning qualified immunity and personal liability. Judge Meyers cites *Davison* for the proposition that "a plaintiff must show '(1) the allegations underlying the claim, if true, substantiate the violation of a federal statutory or constitutional right; and (2) this violation was of a clearly established right of which a reasonable person would have known." DE 37 at 24. Plaintiff is correct that *Davison* does not specify the plaintiff's burden in this respect, but the Supreme Court in *Ashcroft* makes clear that it is the plaintiff who must "plead[] facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." 563 U.S. at 735 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Moreover, while some Fourth Circuit decisions state that the defendant bears the burden of proof on the second prong of the qualified immunity analysis—e.g., *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022) (citing *Henry v. Purnell*, 501 F.3d 374, 378 (4th Cir. 2007))—they appear to do so in Rule 56, rather than Rule 12(b)(6), analyses. The court also notes that *Henry* predates *Ashcroft*.

Plaintiff asserts, "The Magistrate did not hold the Jones Defendants to their burden of proof on qualified immunity." DE 38 at 6. Even if this were a correct application of the law, Plaintiff fails to expound on this statement or point to any portion of the M&R demonstrating that Judge Meyers placed the burden on Plaintiff to establish that the Jones Defendants' actions or inactions violated clearly established law. It is the court's task to define the specific right alleged to have been infringed by a defendant's conduct, *Pfaller*, 55 F.4th at 445, and Judge Meyers did so, as described below. The court acknowledges Judge Meyers' statement that "plaintiff has not cited any precedent demonstrating that the Jones defendants' reliance on the opinions of medical

12

professionals with less mental health expertise violates a clearly established right" (DE 37 at 29), but finds that Judge Meyers conducted his own investigation of relevant case law, cited an "instructive" case, and concluded that he "need not determine whether the Jones defendants' reliance on the medical advice of nurses rather than that of mental health professionals violated a federal right, because even if there is such a right, it was not clearly established at the time of the Jones' defendants' conduct" (*id.* at 30). *Cf. Mitchell v. Forsythe*, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."). The court overrules Plaintiff's objection in this respect.

Plaintiff also objects that Judge Meyers cited and relied on "inapplicable cases concerning the liability of medical professionals for deliberate indifference," saying that his claims "are not based on a disagreement among reasonable medical professionals or a mere disagreement between an inmate and a physician over proper medical care." DE 38 at 7-8. Plaintiff is correct that Judge Meyers cited the Fourth Circuit's opinions in *Hixson v. Moran*, 1 F.4th 297, 303 (4th Cir. 2021) and *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) for the proposition that disagreements among medical professionals or between an inmate and medical provider are insufficient to sustain a deliberate indifference claim. DE 37 at 26-27. Judge Meyers relied on this proposition, in part, not in concluding that Plaintiff's allegations could not sustain his deliberate indifference claim, but in determining that jail officials are permitted to rely on medical opinions, and it was not clearly established on January 1, 2023, that a jail official violates the Fourteenth Amendment if he or she relies on one opinion over a different opinion, even if the opinion relied on was made by a nurse and the rejected opinion was made by a mental health physician. *Id.* at 27, 29-30. This is particularly true when, as here, no one disputes the mental health determination of suicidal

ideation. In this respect, the court overrules Plaintiff's objection.

C. Plaintiff's Objections 6, 7, and 9 and Defendant's Objection B: Errors in Qualified Immunity Analysis

To the extent that Objection 6 may be construed as the same as Objection 4 (i.e., Judge Meyers failed to collapse the two prongs of the qualified immunity analysis based on prevailing law), the court overrules the objection. *See supra.* However, Plaintiff also appears to contend that Judge Meyers erred because, had such analysis occurred, he would have recommended denying the motion to dismiss. The court disagrees.

Plaintiff argues that the proper analysis for a Rule 12(b)(6) dismissal of his deliberate indifference claim is contained in one question: "Does Plaintiff's Complaint plausibly allege that the Jones Defendants had actual knowledge of [the decedent's] serious medical needs and substantial risk of harm and the excessive risk posed by their *inaction*?" DE 38 at 8 (emphasis added). Plaintiff claims that Judge Meyers failed to address this question. *Id.* However, Judge Meyers reviewed Plaintiff's allegations and, taking them as true, found "the Jones defendants did take affirmative actions." DE 37 at 28.

Plaintiff's allegations reflect that, while the Jones Defendants placed the decedent in a single cell in H block (for inmates with acute psychiatric medical needs) on December 1, 2022, and implemented the suicide watch on December 31, 2022—rather than after learning of the medical staff's opinions the next day, January 1, 2023, as suggested by Judge Meyers—the Defendants, knowing that the decedent would be seen by a mental health professional at the earliest possible time on January 4, 2023, determined on January 1 not to change the actions they had already taken. Thus, it is not clear on the face of the Complaint that "the Jones Defendants had actual knowledge of . . . [an] *excessive risk posed by their inaction*" (emphasis added). Plaintiff does not rebut that his cited cases primarily involve situations in which the defendants took *no*

14

relevant affirmative action(s) in response to known risks of harm. Here, the allegations show that the Jones Defendants took affirmative action in response to the risk of suicide and, "while other courses of action may have been viable or even superior, the Jones defendants' conduct did not violate a clearly established right." DE 37 at 28.[7] Plaintiff's objection is overruled.

Plaintiff also takes issue with Judge Meyers' partitioning of "four separate issues" and finding "the law was not clearly established in each segmented area." DE 38 at 8. The court perceives no error; in accordance with prevailing law, Judge Meyers considered the Jones Defendants' "failures to act," listed and alleged by Plaintiff in ¶ 232 of the Complaint and, from these, defined four "particularized" rights alleged to have been clearly established in December 2022 and January 2023. *See Pfaller*, 55 F.4th at 445 ("a court must pinpoint the precise constitutional right at issue in order to determine whether it was clearly established"); *see also King*, 76 F.4th at 266 (same). Here, Plaintiff does not object to Judge Meyers' interpretation or definition of the alleged clearly established rights—just to the act of doing so. *See* DE 38 at 8. The court overrules Plaintiff's objection in this respect.

The Jones Defendants object[8] that Judge Meyers did not consider the attached incident reports (DE 23-4) in his qualified immunity analysis. DE 39 at 10-11. Defendants argue, "the

---

[7] The court also notes that, in 2015, the Supreme Court addressed whether jail administrators were entitled to qualified immunity against the deliberate indifference claim of a pretrial detainee, who was on medication for mental health issues and had a history of suicide attempts, but who did not report current suicidal thoughts, for the administrators' alleged failure to "properly implement adequate suicide prevention protocols." *Taylor v. Barkes*, 575 U.S. 822, 826 (2015). The Court found "[n]o decision of this Court establishes a right to the proper implementation of adequate suicide prevention protocols" and "the weight of [appellate court] authority at the time of Barkes's death suggested that such a right did *not* exist." *Id.* This court has found no Supreme Court or Fourth Circuit case establishing such right, or the rights defined here, since *Taylor* issued.

[8] Defendants also object that Judge Meyers did not consider any of the documents attached to their motion; however, Defendants seek to have such documents considered in evaluating whether a constitutional violation exists and, for reasons stated above, the court finds Judge Meyers did not err in deciding not to engage in such evaluation.

15

Court may consider the incident reports . . . to evaluate how the Jones defendants perceived the relevant facts and in turn whether they acted objectively reasonably and are entitled to qualified immunity on the *first* prong of that test." *Id.* at 11. However, Judge Meyers analyzed only the second prong of the test and, for reasons stated above, did not need to evaluate the first prong. The court overrules the Jones Defendants' objection.

    D. <u>Plaintiff's Objections 8 and 9: Errors Concerning Policies and Standards</u>

Plaintiff objects to the following finding by Judge Meyers regarding Plaintiff's allegations of "violations of jail policies and federal detention standards": "With the exception of the failure to provide a suicide smock and the detention officers' failure to conduct special/suicide watch supervision rounds every fifteen minutes, which are discussed below, plaintiff does not specify what policies and detention standards have been violated. Accordingly, the undersigned finds the remaining arguments related to policy violations to be conclusory." DE 37 at 31. Plaintiff asserts that these allegations are not conclusory in that he properly identifies the "Federal Performance Based Detention Standards" (Compl. ¶ 33), which he argues are accessible on the United States Marshals Service website, and that he properly specifies the "jail policies" in ¶ 156 of the Complaint, in which he cites ADJ Policy 9.5 ("Suicide Prevention, Suicide Attempts and Inmate Death") and lists two requirements of such policy.

In his objection, Plaintiff correctly cites the definition of a "conclusory" allegation as "a factual inference without stating the underlying facts on which the inference is based." DE 38 at 10. While Plaintiff's allegations in ¶¶ 9 (alleging a violation of jail policy),[9] 157, 158, 162, and 208 are well-pled factual allegations that may be taken as true, the allegations in ¶¶ 8, 9 (alleging

---

[9] *See also* Compl. ¶ 214.

"North Carolina jail standards and federal detention standards"),[10] 186, and 209 are conclusory. For example, in ¶¶ 8 and 186, Plaintiff makes the following similar statements: "Despite their knowledge, Administrator Jones, Assistant Administrator Jones, LPN Green, and LPN Mansfield did not follow the directives by the jail's mental health contractor [Dr. Coy], in violation of jail policy and federal detention standards" (Compl. ¶ 8) and "The ADJ detention and medical staff were required to follow Dr. Coy's directives under jail policy and the federal detention standards" (*id.* ¶ 186). Unlike the jail policy requiring suicide smocks and a specially scheduled watch for suicidal inmates, which is described in ¶ 156, Plaintiff makes no allegation identifying what "policy" or "standard" is allegedly violated by the Jones Defendants' conduct in failing to "follow Dr. Coy's directives." Thus, the allegations in ¶¶ 8 and 186 are merely inferences without a statement of the underlying facts supporting the inference. Taking these allegations as true would require the court to speculate. *See Twombly*, 550 U.S. at 555. Plaintiff's objection is overruled.

Finally, Plaintiff objects that Judge Meyers construed his allegations regarding policy violations to state "separate" claims for deliberate indifference. DE 38 at 11. As noted above, Judge Meyers construed Plaintiff's alleged harms (or claims) against the Jones Defendants from the following allegations:

232. On January 1, 2023, Administrator Jones and Assistant Administrator Jones consciously or recklessly failed to address the substantial risks of serious harm to Mr. Clabough by:

   a. Not requiring the detention staff to follow the suicide precaution directives by Correctional Behavioral Health, the jail's mental health contractor, to remove all property and belongings from Mr. Clabough's cell;

   b. Not directing the detention staff to examine and remove potentially dangerous items from Mr. Clabough's cell[;]

   c. Failing to order the detention staff to provide a suicide smock to Mr. Clabough;

---

[10] *Id.*

17

d. Failing to verify that the detention staff were conducting special watch supervision rounds every fifteen minutes;

e. Not contacting Correctional Behavioral Health to discuss their suicide precaution instructions;

f. Not contacting a health care provider to assess Mr. Clabough's condition and suicide risk; and,

g. Failing to direct detention staff to transport Mr. Clabough to a hospital for an emergency psychiatric evaluation.

Compl. ¶ 232. From these and all of Plaintiff's allegations, Judge Meyers defined the "clearly established rights" he understood Plaintiff to claim: (1) Defendants' failure to follow the suicide precaution directives by the jail's mental health contractor to remove all property and belongings; (2) Defendants' failure to follow up with CBH staff or other health care providers;[11] (3) Defendants' violations of jail policy and federal detention standards, including provision of a suicide smock; and (4) Defendants' failure to supervise the special/suicide watch.

Plaintiff objects that Judge Meyers engaged in separate analyses of rights ## 3 and 4, but fails to explain how such analyses are objectionable. For instance, Plaintiff does not argue that these separate analyses rendered her primary claim—that the Jones Defendants failed to consult with and/or follow the directive of Dr. Coy to remove the decedent's belongings and other items he might use for self-harm—insufficient to state a plausible clearly established right. Even if the court were to re-define the right to include Defendants' failures to order a smock[12] and to verify

---

[11] This court construed the allegations to claim that the Jones Defendants improperly chose to consult with the onsite nurses rather than a mental health provider and failed to send the decedent to the hospital, which, considering all well-pled allegations, are not materially different from Judge Meyers' definition.

[12] The court is mindful of Judge Meyers' unrebutted finding that the decedent "formed a noose with bedsheets and a towel ([Compl.] ¶¶ 10, 216), and plaintiff does not allege facts regarding how a suicide smock would have prevented Casey Clabough's death." DE 37 at 31.

18

subordinates were conducting the special watch every fifteen minutes as required by jail policy, such right against this conduct was not clearly established as a violation of the Eighth or Fourteenth Amendments at that time. The court has found no applicable law clearly establishing these rights, individually or in tandem,[13] and overrules Plaintiff's objection.

## V.     Conclusion

The court cannot say, on the facts alleged, that Plaintiff's deliberate indifference claim states a violation against the Jones Defendants "beyond debate." *See Wells v. Fuentes*, 126 F.4th 882, 889 (4th Cir. 2025). "[T]o find a violation of clearly established law, [courts] must be able to identify a case or a body of relevant case law where an officer acting under similar circumstances was held to have violated the Constitution." *Id.* (citing *Rambert v. City of Greenville*, 107 F.4th 388, 402 (4th Cir. 2024)) (cleaned up). The Fourth Circuit instructs that "the factual details of past cases matter a great deal" and the "'crucial question' is whether every reasonable officer would know this action in this situation was unlawful. *Id.* at 890. This court has found no case or body of case law demonstrating that "any reasonable official in [the Jones Defendants'] shoes would have understood that [they were] violating" Plaintiff's Fourteenth Amendment right against deliberate indifference to his serious medical needs. Moreover, it is not so obvious or egregious a violation as to justify setting any precedent.

Suicide is tragic and devastating. Jail administrators are not wholly immune from their failures to take any action (or in taking adverse action) in response to a known substantial risk of

---

[13] The court notes that in 2006, the Fourth Circuit ruled that the right alleged by a pretrial detainee, whose jailers knew that he was suicidal, to have his jailers take precautions against his suicide beyond merely placing him in a cell under video surveillance, did not "derive[] from the Eighth Amendment" and, thus, was not clearly established. *Short v. Smoot*, 436 F.3d 422, 427 (4th Cir. 2006). The *Short* court also recognized that "it was clearly established on the day of Short's death that the conscious failure by a jailer to make any attempt to stop an ongoing suicide attempt by one of his detainees would constitute deliberate indifference." *Id.* at 430.

19

suicide under the Eighth and Fourteenth Amendments. However, here, Plaintiff's allegations, taken as true, demonstrate that the Jones Defendants took some affirmative action consistent with jail policy. It was not clearly established in December 2022 and January 2023 that the Defendants' failure to take additional or different action in response to the risk of decedent's suicide was a constitutional violation.

Upon careful de novo review of the M&R and the record presented, the court ADOPTS the recommendation of the magistrate judge as its own. For the reasons stated therein, the Motion to Dismiss filed by the Jones Defendants [DE 20] is GRANTED and Plaintiff's claims against these Defendants are DISMISSED WITH PREJUDICE.

SO ORDERED this __18th__ day of March, 2026.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

20